UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-00080-TBR

EBONITE INTERNATIONAL, INC.,                                                           PLAINTIFF

v.

RONALD HICKLAND, et al.,                                                                  DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon two Motions. The first has been made by Defendant Creating The Difference, LLC, and it seeks partial dismissal under Federal Rule of Civil Procedure 12(b)(6). [DN 52.] The second Motion has been made by Defendant Ronald Hickland under Federal Rule of Civil Procedure 12(c). [DN 57.] These matters are ripe for adjudication and their merits are discussed below.

**I. Background**

Ebonite International, Inc., ("Ebonite"), is a corporation "that provides bowling-related products and services to customers throughout the United States." [DN 47, at 1.] The company "designs, manufactures, and markets…bowling products and licenses its name in connection with such products, including bowling balls, bags, accessories, and equipment." [*Id.*] Defendant Ronald Hickland, ("Hickland"), was previously employed by Ebonite, where he held the position of technology and design engineer. [*Id.*] He left the company in February 2015 and subsequently started a new limited liability company called Creating The Difference, LLC, ("CTD"). [*Id.* at 3.] Hickland and his wife are the two members of CTD, which "manufactures and sells bowling-related products" such as "bowling ball cleaner and various other bowling accessories." [*Id.*]

1

According to Ebonite's Amended Complaint, in the course of his employment with Ebonite, "Hickland obtained confidential and proprietary business information from Ebonite including but not limited to information concerning Ebonite's products, customers, business strategies, finances, methodologies, processes, operations, and pricing." [*Id.* at 4.] Because of Hickland's knowledge of the inner workings of Ebonite, the company had Hickland sign an employment agreement, "whereby he agreed, *inter alia*, that he would not misappropriate Ebonite's confidential information or compete directly with Ebonite following the cessation of his employment." [*Id.* at 9.] As part of this agreement, Hickland acknowledged that "he would not enter into Direct Competition with [Ebonite] within the United States" for three years following the termination of his employment with the company. [*Id.* at 10.]

Ebonite alleges that, upon leaving the company in February 2015, Hickland started CTD in violation of his employment agreement. [*Id.* at 10.] Specifically, Ebonite alleges that "Hickland has violated, threatened to violate, and/or inevitably will violate various of his restrictive covenant obligations. Such conduct in violation of the covenants includes but is not limited to" the following: "(a) solicitation of Ebonite's customers; (b) use and disclosure of Ebonite's Confidential Information including, *inter alia*, information relating to Ebonite's products and services and research projects; and (c) competing directly with Ebonite by manufacturing, marketing, and selling products that compete with Ebonite's products." [*Id.* at 11.]

On April 20, 2017, Ebonite filed this lawsuit, and on August 31, 2017, it filed an Amended Complaint, wherein it alleges the following claims: (1) copyright infringement against Hickland and CDT; (2) breach of contract against Hickland; (3) tortious interference with contract against CTD; and (4) civil conspiracy against Hickland and CDT. [*Id.* at 12-17.]

## II. CTD's Motion for Partial Dismissal

The first Motion at issue is CTD's motion for partial dismissal under Rule 12(b)(6). CDT argues that Ebonite has failed to state a claim upon which relief can be granted with respect to its claims of (1) tortious interference and (2) civil conspiracy. The merits of this Motion are discussed below.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Importantly, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir. 1999). This means that, "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion should be denied. *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

Although a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The concept of "plausibility" indicates that a complaint should contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. The element of plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, where the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).

## B. Discussion

In the instant Motion, CTD has moved for a partial dismissal under Rule 12(b)(6). [DN 52.] Specifically, CTD argues that Ebonite has failed to state a claim upon which relief can be granted with respect to claims three and four of its Amended Complaint. [*See* DN 47.] These claims allege (1) civil conspiracy against Hickland and CTD, and (2) tortious interference with a contract against CTD. [*See id.* at 16-17.] The Court will analyze each of the claims separately.

### 1. Civil Conspiracy Claim

The first claim CTD seeks to have dismissed under Rule 12(b)(6) is Ebonite's civil conspiracy claim against it and Hickland. "In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)); *see also Wallace v. Midwest Fin. & Mortg. Servs.,*

4

*Inc.*, 714 F.3d 414, 422-23 (6th Cir. 2013). As the Sixth Circuit Court of Appeals has explained, "[t]he 'gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy'—meaning a plaintiff must also prove that the act or acts caused her injuries." *Id.* at 423 (quoting *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002)). After reviewing the relevant submissions by the parties, the Court finds that Ebonite has failed to state a claim upon which relief can be granted with respect to its civil conspiracy claim and, as a result, this claim must be dismissed.

The Sixth Circuit embraces "the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (citing *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)). The so-called "intra-corporate conspiracy doctrine" draws "on a 'common sense' insight 'that a person cannot conspire with himself'" and "teaches that, since a corporation only acts through its officers, a group of corporate officers acting within the scope of employment cannot create a conspiracy." *Bays v. Canty*, 330 F. App'x 594, 594 (6th Cir. 2009) (quoting *Harp v. King*, 835 A.2d 953, 971 (Conn. 2003)); *see also Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016) (discussing the intra-corporate conspiracy doctrine as "a logical extension of [Kentucky] rules that a corporation can only act through its agents," as well as the fact "that a conspiracy involves two or more persons.") (internal citations omitted).

In the present case, CDT argues that the intra-corporate conspiracy doctrine applies because the two parties that are alleged to have conspired against Ebonite are CDT, a limited liability company, and Hickland, one of the LLC's members. CDT states that the impetus of Ebonite's civil conspiracy argument is that Hickland and CDT conspired to unlawfully compete

5

with Ebonite, and that their relative positions as member and LLC, respectively, means that Ebonite has failed to state a claim upon which relief can be granted and the claim must be dismissed. The Court agrees.

In its Amended Complaint, Ebonite alleges that "CTD and Hickland have acted in concert to breach (and assist each other to breach) Hickland's contractual covenant obligations…and to use Ebonite's Confidential Information and compete directly with Ebonite…." [DN 47, at 17.] Further, Ebonite alleges that "CTD's and Hickland's actions are unlawful in that Hickland breached the terms of his restrictive covenants in furtherance of his unlawful scheme to operate his rival company, CTD." [*Id.*] Finally, Ebonite alleges that, "[a]s a consequence of CTD and Hickland's conspiracy, Ebonite has suffered economic losses and/or will suffer such damages…." [*Id.*] It is clear, then, that the only two parties alleged to have been involved in the conspiracy at issue are CTD and Hickland. There is no allegation in the Amended Complaint that Hickland's wife, the other member of CTD, was involved in the alleged conspiracy or that some other individual or entity took part in CTD's or Hickland's actions. [*See id.*] This means that the Court's analysis of the claim and, relatedly, the intra-corporate conspiracy doctrine, is properly confined to CDT and Hickland.

Ebonite argues in its Response to the instant Motion that, irrespective of the intra-corporate conspiracy doctrine, a civil conspiracy claim is still viable where the individual at issue, although an employee of the company, acted individually rather than as an agent of the corporation. [*See* DN 55, at 5.] In essence, Ebonite's position is that "an employee not acting within the scope of his employment is not conspiring on behalf of the corporation" and, therefore, the intra-corporate conspiracy doctrine should not apply. [*Id.*] Importantly though, Ebonite made no such claim in its Amended Complaint. To be sure, the Sixth Circuit adheres to

the distinction between those acts by employees that are within the scope of their employment and those that fall outside the scope. *See Johnson v. Hills & Dale Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (explaining the intra-corporate conspiracy doctrine and the "'scope of employment' exception [thereto] that recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place.").

In this case, though, the allegations made by Ebonite are that CTD and Hickland conspired to breach his employment agreement to compete in business with Ebonite, to induce Ebonite's customers to take their business to CDT, and to abscond with Ebonite's confidential information. [*See* DN 47, at 17.] In other words, all of the acts that Ebonite alleges constituted a civil conspiracy relate directly to actions that would be squarely within the scope of Hickland's business, both with Ebonite and with CDT. This is not a case where allegations have been made that employees who happen to work at the same company conspired in some manner unrelated to their jobs, *i.e.*, outside the scope of their employment. *See Johnson*, 40 F.3d at 840. Instead, this is a case where the allegations made by Ebonite pertain only to the business in which Ebonite, CDT and Hickland are all engaged. Consequently, Ebonite has not stated a claim upon which relief can be granted.

As a final note, Ebonite speculates that "[i]t is plausible that Hickland, individually, could have conspired with another person acting within the scope of their employment for CTD and therefore acting on behalf of CTD." [DN 55, at 5.] More specifically, "[t]his third party acting as an agent for CTD could have been Hickland's wife, who is admittedly a member of CTD, or it could have been an employee, investor, or other third party acting as an agent for CTD." [*Id.*] But Ebonite made no such allegations in its Amended Complaint. As this Court noted previously,

in the civil conspiracy section of its Amended Complaint, Ebonite does not name Hickland's wife or otherwise intimate that she was involved, or that any other individuals were involved other than Hickland and CTD. Speculation as to the potential existence of other, as-yet-unnamed individuals in a response to a motion is insufficient to withstand dismissal.

### 2. Tortious Interference Claim

The second claim CTD seeks to have dismissed is Ebonite's tortious interference claim. A party alleging tortious interference with a contract must show the following six elements: "(1) the existence of a contract;" (2) the defendant's "knowledge of this contract;" (3) that the defendant "intended to cause its breach" of the contract; (4) causation; (5) that the breach at issue caused damages to the plaintiff; and (6) that the defendant "had no privilege or justification to excuse its conduct." *Ventas, Inc. v. Health Care Prop. Investors, Inc.*, 635 F. Supp. 2d 612, 618-19 (W.D. Ky. 2009) (citing *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 755 (W.D. Ky. 2006)); *see also Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. Ct. App. 2012).

"'At a minimum, to be actionable,' a party claiming tortious interference with a contract 'must show that a contract existed between it and a third party followed by a breach by the third party.'" *Griffin v. Jones*, 170 F. Supp. 3d 956, 968 (W.D. Ky. 2016) (quoting *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995)). More than that, though, "[a] claim for tortious interference with contract requires not just a contract between the claimant and a third party, but also necessarily implies that the person causing the breach of that contract is not himself a party to the contract. In other words, a person cannot tortuously interfere with a contract to which they are party." *Id.* (citations omitted).

8

The impetus of CTD's Motion with respect to this claim is that Ebonite has simply failed to identify a third party, and that "Hickland cannot be considered a third party because 'a corporation can only act through its agents.'" [DN 52-1, at 5-6 (quoting *Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016).] In other words, according to CTD, "Ebonite has failed to allege that CTD interfered with the performance of a contract between Ebonite and a third party" because Hickland is properly classified as an agent of CTD, being the founding member of the company. [*See id.*] CTD argues that Ebonite's claim amounts to an allegation "that Hickland tortuously interfered with his own contract." [*Id.* at 6.]

In its Response, Ebonite argues that its tortious interference claim "is well-pled and plausible on its face," which is all that Rule 12(b)(6) requires at this stage in the litigation. [DN 55, at 6.] In support of this, and by way of rebuttal to CTD's third-party argument, Ebonite notes the following:

> CTD argues that a third party must be identified by Ebonite in order to state a claim for tortious interference of the Employment Agreement. However, because this litigation is just beginning, and CTD is a newly-formed company about which Ebonite has little-to-no knowledge regarding its structure and dynamics, it is not 'implausible' to believe that a third party, such as an investor, agent, or CTD employee, could have interfered with Hickland's Employment Agreement. All of Hickland's actions do not necessarily have to be as an agent of CTD; he can act individually. Therefore it is entirely plausible that Hickland, individually, and CTD, through an agent, could have tortuously interfered with the Employment Agreement. Notably, Ebonite's First Amended Verified Complaint alleges that Hickland and his wife are members of CTD…As such, Hickland's wife, as an agent of CTD, and Hickland, individually, could have tortuously interfered with the Employment Agreement. Or, an unknown third party, as an agent of CTD, and Hickland, individually, could have tortuously interfered with the Employment Agreement.

[*Id.* at 7.] Ebonite's argument is, essentially, that this is sufficient for the claim to be "plausible on its face," as required by *Iqbal*, 556 U.S. at 678. In its Reply, CTD discounts Ebonite's argument as "speculation" concerning the existence of a third party, and states that "none of this

9

speculation actually appears in the Complaint." [DN 56, at 5.] The Court agrees with CTD's characterization of this issue.

In its Amended Complaint, Ebonite indicates that it "has maintained a valid contractual relationship with Hickland," and that it "had a reasonable expectation that Hickland would fulfill his obligations under the Employment Agreement." [DN 47, at 16.] Further, Ebonite alleges that, with "actual or constructive knowledge," it was CTD that "wrongfully and unjustifiably interfered with Ebonite's contractual relationship with Hickland by inducing and incentivizing and/or knowingly permitting and accepting the benefit of Hickland's breach of his contractual obligations to Ebonite…." [*Id.*] Next, Ebonite alleges that, "[i]n connection with CTD's actions, Hickland has breached the terms of his Employment Agreement," that CTD's interference "is unlawful, non-privileged, and without any justification," and that because of "CTD's interference with Hickland's contractual obligations to Ebonite, Ebonite has suffered economic losses and/or will suffer such damages…." [*Id.* at 17.] Noticeably absent from the tortious interference section of Ebonite's Amended Complaint is (a) any reference to Hickland's wife, who is the other member of CTD, (b) any allegation that Hickland was not acting as an agent of CTD, (c) any reference to an "unknown third party" or any other individual. Indeed, no reference is made to any other person or entity apart from CTD and Hickland in the tortious interference section. [*See id.* at 16-17.]

This Court's sister court in the Southern District of Ohio explained the issue clearly and concisely: "[a]lthough the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations." *Burda v. Wendy's Int'l, Inc.*, 659 F. Supp. 2d 928, 932 (S.D. Ohio 2009) (citing *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.

1971), *Twombly*, 550 U.S. at 544). Thus, "[t]he factual allegations" laid out in a plaintiff's complaint, "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *Id.* at 933 (citing *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir 2007)). The allegations contained in Ebonite's Amended Complaint with respect to its tortious interference claim fall squarely within what is properly classified as speculation. Conceivably, it could be that some other individual or entity was involved in the process whereby Hickland left Ebonite and formed CDT, allegedly in violation of his employment agreement with Ebonite. However, that was not pled at all in the Amended Complaint, and this Court need not make "unwarranted factual inferences" to that effect. *See Blakely*, 276 F.3d at 863.

Finally, the Court notes that neither Hickland nor CTD would be properly construed as a "third party" under the allegations of the Amended Complaint. As CTD correctly points out in its Motion, "it is hornbook law that a corporation can act only through its agents…." *McCarthy v. KFC Corp.*, 607 F. Supp. 343, 345 (W.D. Ky. 1985). In its Amended Complaint, Ebonite notes that "Hickland and his wife are the two members of CTD." [DN 47, at 3.] Thus, Hickland and his wife are two agents of CTD, and CTD can only act through its agents. There is no allegation that Hickland's wife was involved in any actions constituting tortious interference on behalf of CTD. This leaves only Hickland himself. And while Ebonite presents a new argument in its Response that Hickland, in addition to acting as an agent on behalf of CDT, could also have acted "individually," presumably meaning outside the scope of his employment with CDT, there is nothing in the Amended Complaint which would lead this Court to conclude that this is an inference which should be made. The allegations in the Amended Complaint pertain directly to Hickland's employment with Ebonite, his departure, the subsequent creation of CDT, and the

allegedly unlawful competition that CDT's creation sparked. In short, Ebonite has simply failed to state a claim for tortious interference with a contract and, consequently, this claim must be dismissed.

### III. Hickland's Motion for Partial Judgment on the Pleadings

The next Motion at issue is Hickland's Motion for partial judgment on the pleadings under Rule 12(c). Hickland argues that Ebonite has failed to state a claim upon which relief can be granted with respect to its claims of (1) breach of contract and (2) civil conspiracy. The merits of this Motion are discussed below.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court scrutinizes a Rule 12(c) motion using the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). This means that, for a plaintiff to survive a Rule 12(c) motion for judgment on the pleadings, his or her complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And although "[t]he plausibility standard is not akin to a 'probability requirement,'" it necessitates "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the allegations made by the plaintiff in her complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When a Court is presented with a Rule [12(c)] motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion…so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)). Finally, in analyzing a Rule 12(c) motion, the Court "construe[s] the complaint in the light most favorable to the nonmoving party, accept[s] the well-pled factual allegations as true, and determine[s] whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, this does not mean that the Court must "accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.*

### B. Discussion

As an initial matter, the Court must address the timeliness of Hickland's Motion. In its Response, Ebonite argues that "Hickland's Motion for Judgment on the Pleadings is untimely, and therefore improper, as the entirety of this matter's pleadings have yet to be filed." [DN 58, at 1 (citing *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 705 (W.D. Ky. 2013).] Of course, the plain language of Rule 12(c) instructs that a motion under this subsection may be made "after the pleadings are closed—but early enough not to delay trial…." Fed. R. Civ. P. 12(c). In *Griffin*, this Court explained that "the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." *Griffin*, 970 F. Supp. 2d at 705 (citations omitted). Here, while Hickland has filed an Answer to Ebonite's Amended Complaint, [DN 50], CDT chose instead to file a Motion for partial dismissal under Rule 12(b)(6), which this Court analyzed above. Because, as of the date of entry

13

of this Opinion, CDT has not yet filed an answer, Hickland's Motion for judgment on the pleadings is technically untimely.

However, it is also true "that courts maintain discretion in certain situations to consider a Rule 12(c) motion even where not all defendants have filed an answer." *Id.* (citations omitted). One such circumstance is "where no prejudice to any party would result." *Noel v. Hall*, No. CV99-649, 2005 WL 2007876, at *1 (D. Or. Aug. 16, 2005). The Court finds this to be such a situation. Accordingly, the Court will address the merits of Hickland's Motion at this time.

### 1. Breach of Contract Claim

The first claim on which Hickland seeks dismissal is Ebonite's breach of contract claim. In its Amended Complaint, Ebonite alleges that Hickland breached his employment agreement when he left the company and subsequently started CDT. [DN 47, at 15-16.] Ebonite further alleges that, "[i]n the Employment Agreement Hickland covenanted not to disclose Ebonite's Confidential Information," that "Hickland also covenanted not to engage in Direct Competition with Ebonite," and that Hickland breached the agreement "[t]hrough his formation of and work for CTD." [*Id.*] Essentially, Hickland argues in the instant Motion that the contract at issue, his employment agreement with Ebonite, lacked consideration and therefore is unenforceable. [DN 57-1, at 5-6.]

"To prove a breach of contract, the complainant must establish three things: (1) existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov. v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007)). With respect to element one, the existence of a contract, there are three familiar elements required to be present for an enforceable contract to exist: an offer, an acceptance of the offer,

and consideration. *See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002). Consideration is defined as "[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943).

According to Hickland's Motion, there are actually two employment agreements: the first was executed in May 2001 when Ebonite hired Hickland. The second was executed in October 2006, and expanded the non-compete provision to include the entire United States and lengthened the period of non-competition time from eighteen months to three years. [*Id.* at 2-3.] Both agreements "prohibit[ed] Hickland from divulging [the] confidential and proprietary information of Ebonite made available to him during his employment." [*Id.* at 3.] It is the second agreement which is at issue here. Hickland argues that "the Second Agreement is unenforceable for lack of consideration because it did nothing to change the employment relationship. Hickland was not provided any additional financial compensation, he explicitly remained an at-will employee and he already had access to the proprietary information as set forth in the First Agreement. To be blunt, the Second Agreement was inequitably one-sided." [*Id.* at 10.]

In his Motion, Hickland relies principally on a Kentucky Supreme Court decision: *Charles T. Creech, Inc. v. Brown*, 433 S.W.3d 345 (Ky. 2014). Similar to the allegations which have been made in this case, there the defendant, Donald Brown, was an employee of Charles T. Creech, Inc., and was asked to sign a "conflicts of interests" agreement, which he did. *Id.* at 347. Later, after being transferred to a different department, Brown left Creech, Inc. and began working for a competitor. *Id.* at 348. Eventually, Creech, Inc. filed suit against Brown, seeking to enjoin him from competing with the company. *Id.* Brown argued that the agreement he signed lacked consideration and was therefore invalid. *Id.* The Kentucky Supreme Court found that,

15

"[a]fter Brown signed the Agreement his employment relationship with Creech did not change. He remained an at-will employee with no promotion, no increase in wages, and no specialized training. In short, Brown received no consideration from Creech in exchange for signing the Agreement or after he signed the Agreement. Therefore, the Agreement is not enforceable." *Id.* at 354.

At first glance, the facts of *Creech* appear to mirror, at least in some respects, the facts and/or allegations made so far in this case. However, at the outset, there is one major difference: the *Creech* decision was reached at the summary judgment stage. *See id.* Here, the Court has been asked to rule on a motion to dismiss under Rule 12(c). The legal standards presented under Rule 56 summary judgment and Rule 12(c) judgment on the pleadings differ substantially. Additionally, at the summary judgment phase, more discovery has typically been completed, deposition testimony is available, and the Court is asked to look beyond the sufficiency of the pleadings and to the disputes of fact between the parties. In short, while *Creech* likely offers some guidance concerning non-compete agreements and the question of the adequacy of consideration, it would be inappropriate at this stage for the Court to begin weighing factual questions like those raised by Hickland in this portion of his Motion.

Indeed, it has even been posited that "[q]uestions of…failure or lack of consideration are not properly subjects of a motion to dismiss…." 35B C.J.S. Federal Civil Procedure § 804 (citing *Carl Gutmann & Co. v. Rohrer Knitting Mills*, 86 F. Supp. 506 (E.D. Pa. 1949)). The key inquiry in analyzing a motion for judgment on the pleadings under Rule 12(c) is the adequacy of the complaint, *i.e.*, whether the plaintiff, in its complaint, has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And utilizing the legal standard for breach of contract, outlined above, the Court finds that Ebonite has stated a plausible claim that

(a) a contract existed between it and Hickland wherein Hickland agreed to, among other things, a non-compete clause, (b) that Hickland breached that contract when he formed CDT, a limited liability company engaged in a business similar to Ebonite, and (c) that Ebonite suffered damages as a result of the breach in the form of lost business opportunities, lost customers, the unauthorized use of copyrighted materials, and more.

In his instant Motion concerning the sufficiency of the consideration, Hickland refers to all manner of different issues of fact: he argues that he "did not receive any kind of specialized training following the execution of the Second Agreement," that he "did not receive any form of compensation for entering into the Second Agreement," that he already possessed proprietary information at the time he signed the second agreement, that he remained an at-will employee after signing the document, and more. While some of these facts might not truly be disputed, the Court would need to stretch far beyond the pleadings in order to construct a complete picture of the issues at hand, and this would be inappropriate in its consideration of a motion to dismiss under Rule 12. Accordingly, Hickland's Motion must be denied as to this claim.

### 2. Civil Conspiracy Claim

This Court already ruled, above, that Ebonite has failed to state a claim upon which relief can be granted with respect to its civil conspiracy claim. Thus, Hickland's Motion is dismissed as moot as to this claim.

### IV. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. CTD's Motion for Partial Dismissal, [DN 52], is **GRANTED.**

2. Hickland's Motion for Partial Judgment on the Pleadings, [DN 57], is **DENIED** as to the breach of contract claim, and **DISMISSED as moot** as to the civil conspiracy claim.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 7, 2018

cc:    Counsel of Record